# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

RICHARD H. LIVINGSTON

                                  Plaintiff,

    v.

                                              7:15-CV-475

CITY OF SYRACUSE, et al.,                    (GLS/ATB)

                                Defendant.

RICHARD H. LIVINGSTON
Plaintiff, pro se

ANDREW T. BAXTER, Magistrate Judge

## ORDER

The Clerk has sent to the court for review this complaint, together with an application to proceed in forma pauperis ("IFP") from pro se plaintiff, Richard H. Livingston. (Dkt. Nos. 1, 2). Plaintiff has also moved for appointment of counsel. (Dkt. No. 3).

**I.    IFP Application**

The statute governing IFP actions provides that the court may authorize the commencement of a civil action without the payment of fees, when the plaintiff files an affidavit that includes a statement that he is unable to pay the required fee or give security therefor. 28 U.S.C. § 1915(a)(1). Plaintiff in this case is currently incarcerated and has filed a form-motion to proceed IFP. (Dkt. No. 2). A review of the application shows that plaintiff's IFP application may properly be granted.

**II.    Complaint**

Plaintiff alleges that on June 3, 2014, while he was driving on the 100 block of Merriman Avenue in the City of Syracuse, defendants Syracuse Police Officers, Cope

and Patti pulled plaintiff over for having "tinted windows." (Complaint (Compl. ¶ 10)). Plaintiff states that Officer Cope approached the car and asked plaintiff to produce his license, which was "valid." (Compl. ¶ 12). Plaintiff claims that defendant Cope instructed plaintiff and his passengers to get out of the car. (*Id.*) Defendant Cope then conducted a search of plaintiff's person, but that the search was "negative for contraband." (*Id.* ¶ 13).

However, the search of plaintiff's passengers revealed that one of them, (Mr. Emmanuel Palmer), had a small bag of marijuana in his sock, and the other passenger (Mr. John Land), had 3.5 grams of crack cocaine and $667.00 on his person. (*Id.*) The officers arrested Mr. Land and proceeded to search plaintiff's car "for further contraband." (Compl. ¶¶ 14-15). Plaintiff claims that the vehicle search resulted in the discovery of a digital scale that was "packaged and sealed inside [a] box." (*Id.* ¶ 15). Plaintiff states that Mr. Land told the officers that the scale was his and "accepted full responsibility." (*Id.* at ¶ 16). Plaintiff informed the officers that he had "no knowledge of the scale" and informed them that he was enrolled in a "Judicial Diversion program" which required plaintiff to "stay out of trouble." (*Id.* ¶ 17).

Plaintiff claims that once he told the officers about the diversion program, he was placed under arrest for possession of drug paraphernalia; seventh degree possession of a controlled substance; and he was issued two Uniform Traffic Tickets for motor vehicle/equipment violations. (*Id.* ¶ 18). Plaintiff has attached a copy of the Police Report as Exhibit A to the complaint.[1] Plaintiff was arraigned on the charges on June 4, 2014, and on June 6, 2014, plaintiff was released on $750.00 bail. (*Id.* ¶¶ 19-20).

---

[1] The court must point out that plaintiff's version of the facts is different than the facts stated in the police report. (Compl. Ex. A).

Plaintiff claims that on June 10, 2014, he was taken back into custody and "sanctioned to 7 days in jail, warned of a final chance, threaten[ed] with [an] enhanced sentence for violating a no-arrest contract clause for the Judicial Diversion program at Syracuse Treatment Court." (*Id.* ¶ 21). Plaintiff then states that "[b]ecause of this *new arrest*, plaintiff was sentenced to 6 years in state prison." (*Id.*) (emphasis added).

On June 24, 2014, the bail bondsman informed plaintiff that he had been "[e]xonerated on the said charges," and that the property that was pledged for his bail was being returned to its owner. (*Id.* ¶ 22). Plaintiff has attached a copy of this notice as Exhibit B to the complaint. (*Id.*) Plaintiff states that the charges in connection with the June 3, 2014 traffic stop were dismissed on November 25, 2014. A copy of that disposition has been attached as Exhibit C to the complaint. (*Id.* ¶ 23).

The complaint contains a variety of claims/"counts,"[2] including what appear to be both federal and state law claims. The claims include[3] negligence by the officers and by the City of Syracuse "Police Department" in failing to train and supervise its officers, which permitted "a pattern and practice of misconduct and violation of rights;"[4] "malicious abuse of process;" false arrest; false imprisonment; malicious prosecution;[5] intentional infliction of emotional distress;[6] conspiracy to violate civil

---

[2] There are 13 "Counts" in the complaint. Plaintiff has apparently attempted to list separate counts naming the officers and the Police Department, charging the same alleged misconduct. Plaintiff has also attempted to separate the "compensatory" damage claims from the "exemplary" damage claims. This makes the complaint very difficult to read due to many redundant paragraphs.

[3] For a more detailed statement of the claims/counts, reference is made to the complaint herein.

[4] (Compl. ¶¶ 28-31, 36-38, 40). Paragraph 40 alleges "Negligent Investigation."

[5] (Compl. ¶¶ 33-35).

[6] (Compl. ¶¶ 41-44).

3

rights,[7] and illegal search and seizure.[8] Plaintiff seeks a substantial amount of monetary damages including compensatory and "exemplary" damages.

## III. Syracuse Police Department

### A. Legal Standards

Departments that are merely administrative arms of a municipality do not have a legal identity separate from the municipality and may not sue or be sued. *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. Nov. 9, 2012) (citing *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y.2002) (dismissing claim against the police department); *Umhey v. County of Orange*, 957 F. Supp. 525, 530–31 (S.D.N.Y. 1997) (dismissing case against the County Board of Ethics). Therefore, claims asserted under 42 U.S.C. § 1983 will be dismissed against an administrative department or sub-division of a municipality or county. *Id. See also Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (because the county sheriff's office was an administrative arm of the county, it was not the appropriate party in a section 1983 action)).

### B. Application

Plaintiff has sued the "Syracuse Police Department" in addition to the "City of Syracuse." As stated above, the Police Department does not have a separate legal identity from the City. Thus, plaintiff may not name the Police Department as a defendant. However, because plaintiff has already named the City of Syracuse as a

---

[7] (Compl. ¶ 46).

[8] (Compl. ¶ 48-54). Count 13 asserts "violation of statutory civil rights," but then repeats an illegal search and seizure claim. (Compl. ¶ 58).

4

defendant, the Clerk may terminate the "Police Department" as redundant.[9]

## IV. *Heck v. Humphrey*

### A. Legal Standards

Civil lawsuits may not be used to collaterally attack criminal convictions or confinements. *Heck v. Humphrey*, 512 U.S. 477 (1994); *Croft v. Greenhope Services for Women, Inc.*, No. 13 Civ. 2996, 2013 WL 6642677, at *5 (S.D.N.Y. Dec. 17, 2013) (citing *Heck, supra*). In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. 512 U.*S.* at 486-87.

### B. Application

In this case, plaintiff alleges a variety of claims, including false arrest, malicious prosecution, and illegal search and seizure under the Fourth Amendment. He alleges that the charges that were the basis for the arrest and prosecution were dismissed and

---

[9] The court notes that Count 1 and Count 12 of the complaint raise "respondeat superior" arguments. Count 1 simply alleges that the City is liable for the officer's intentional torts based upon a theory of respondeat superior. (Compl. ¶ 24-26). It is well-settled that in order to establish liability of a municipality pursuant to 42 U.S.C. § 1983 for violation of civil or constitutional rights, a plaintiff must allege that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli*, 980 F. Supp. 635, 639 (N.D.N.Y. 1997) (citing *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 689 (1978)) (other citations omitted). Generally speaking, a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, will not suffice to raise an inference of the existence of a custom or policy. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). A municipality may not be held liable on the basis of respondeat superior alone. *Id.* This court will not discuss what liability the City may have as the result of any state law claims. At this time, rather than recommending dismissal of any claims, the better course is to order service of the complaint and create a record that is more clear.

attaches the court's disposition as Exhibit C. Plaintiff then appears to allege that he was returned to prison for six years due to his violation of a contract relating to his "Judicial Diversion Program." Plaintiff's complaint is not very clear. Plaintiff alleges that he was taken back into custody on June 10, 2014, and "because of this new arrest," he was sentenced to 6 years in state prison. It is unclear whether the "new" arrest was the same arrest that plaintiff is challenging as the "false arrest." He includes information (the alleged dismissal of the claims) that could be interpreted as a favorable result for purposes of *Heck,* regarding the charges for which he was arrested on June 3, 2014.[10]

Based on the liberality with which pro se complaints are handled,[11] this court will allow this action to proceed. This court makes **no finding as to the ultimate merits** of the case or whether it would survive a motion to dismiss or one for summary judgment.

## V. <u>Appointment of Counsel</u>

### A. **Legal Standards**

There is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Section 1915 specifically provides that a court **may** request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the

---

[10] The court does note that malicious prosecution requires that the charges terminated in plaintiff's favor. *See Johnson v. City of New York*, 551 F. App'x 14 (2d Cir. 2014); *Rothstein v. Carriere*, 373 F.3d 275, 286-87 (2d Cir. 2004). A termination is not favorable to an accused if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused. *Rothstein*, *supra*. This court cannot specifically determine the basis for the disposition of the June 3, 2014 charges based upon the information provided without engaging in unwarranted speculation.

[11] *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

"precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Terminate Control Corp. v. Horowitz*, the Second Circuit listed the factors that a court must consider in making the determination of whether to appoint counsel. As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance. *Terminate Control Corp.*, 28 F.3d at 1341 (citing *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). If so, the court should then consider:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Id*. This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

### B. Application

In his motion for appointment of counsel, plaintiff alleges that he has contacted attorneys who have declined to represent him. (Dkt. No. 3). He has attached the letters that he received from counsel as exhibits to his motion. (Dkt. No. 3 at 2-10). Plaintiff argues that he does not have the expertise to "go against" licensed attorneys. While the court does not doubt plaintiff's statements,[12] this action has just been filed. It is still

---

[12] The court would point out that many pro se plaintiff's lack expertise in the law. If that were the only criterion, the court would have to appoint counsel in every case. However, as stated above, that is not the law.

7

early in the action, and absent additional information or discovery, this court is unable to assess the substance of plaintiff's case. Where the court does not possess evidence, as opposed to mere allegations, relating to plaintiff's claims, the threshold requirement in the analysis of cases seeking appointment of pro bono counsel is not met. *See Harmon v. Runyon*, No. 96-Civ.-6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997).

Because the court cannot determine the substance of plaintiff's action at this time, the court need not proceed to a more in-depth analysis of the *Hodge* factors. The court will deny plaintiff's motion without prejudice. As the case proceeds, and some discovery is exchanged, the court may entertain another motion for appointment of counsel by plaintiff. Plaintiff shall not file further requests for appointment of counsel except upon changed circumstances and after the complaint has been served and some discovery has been exchanged.[13]

**WHEREFORE**, based on the above, it is

**ORDERED**, that plaintiff's IFP (Dkt. No. 2) is **GRANTED**.[14] The Clerk shall issue summonses and forward them, along with copies of the complaint to the United States Marshal for service upon the named defendants, except for the Syracuse Police Department. The Clerk shall forward a copy of the summons and complaint to the Office of the Corporation Counsel of the City of Syracuse, together with a copy of this Order, and it is

**ORDERED**, that the Clerk terminate **SYRACUSE POLICE DEPARTMENT**

---

[13] Plaintiff should be aware that the court will issue a mandatory pretrial scheduling order that will provide for the parties to exchange certain documents that are relevant to the issues in the case. This exchange of discovery will assist plaintiff without the need for counsel in the early stages of the litigation.

[14] The court notes that although plaintiff's application to proceed *in forma pauperis* has been granted, plaintiff will still be required to pay fees that he may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

as a defendant as redundant of the City of Syracuse, and it is

**ORDERED**, that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's inmate authorization form, and notify the official that this action has been filed, and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915, and it is

**ORDERED**, that the Clerk provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office, and it is

**ORDERED**, that a formal response to plaintiff's complaint be filed by the defendants or defendants' counsel as provided in the Federal Rules of Civil Procedure subsequent to service of process on the defendants, and it is

**ORDERED**, that plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED WITHOUT PREJUDICE** as stated above, and it is

**ORDERED**, that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. **<u>Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys may be stricken by the Court.</u>** Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District, and it is further

**ORDERED**, that the Clerk serve a copy of this Order upon Plaintiff in accordance with the Local Rules.

Dated: April 27, 2015

_Andrew T. Baxter_
Hon. Andrew T. Baxter
U.S. Magistrate Judge